**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 2:20-cv-2601** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **FORTY-FIVE THOUSAND AND 00/100 DOLLARS ($45,000.00) IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| **Defendant.** | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

**NATURE OF THE ACTION**

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

**THE DEFENDANT IN REM**

2. The defendant is Forty-Five Thousand and 00/100 Dollars ($45,000.00) in United States Currency. On or about December 5, 2019, the Drug Enforcement Administration ("DEA") seized the defendant from Nataly Aguilar Valdovinos, following a consensual encounter with her at the John Glenn Columbus International Airport. The United States has deposited the defendant into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7. On or about December 5, 2019, members of the Columbus, Ohio Airport DEA Group at John Glenn Columbus International Airport ("CMH") received information regarding the suspicious travel of a passenger identified as Nataly Aguilar Valdovinos ("Aguilar Valdovinos").

    a. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate

distribution of controlled substances frequently use CMH and the aircraft that arrive and depart there to transport drug sales proceeds, and funds to be used to purchase drugs, in and out of Columbus. Those proceeds and funds are usually in the form of United States currency.

b. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate distribution of controlled substances frequently use couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of Columbus. CMH and the aircraft that arrive and depart there are relied upon as a means of sending and receiving such couriers.

c. Members of the Columbus, Ohio Airport DEA Group are trained and experienced in investigating illegal drug and drug currency couriers, and they have learned to observe and detect the behavior, characteristics, and other travel indicators that help them to distinguish suspected illegal drug and drug currency couriers from the normal, non-criminal traveling public.

d. Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that illegal drug and drug currency couriers often purchase airline tickets within 72 hours of travel to a known source area for illegal drugs like Los Angeles, California, or to a known destination area for illegal drugs like Columbus, Ohio.

e. Members of the Columbus, Ohio Airport DEA Group also know that illegal drug and drug currency couriers will often purchase one-way tickets because the date of their return is not immediately known.

    f. DEA Special Agent Jonathan Hanley ("SA Hanley"), Task Force Officer Andrew D'Orazio ("TFO D'Orazio"), and DEA Task Force Officer Eric Doyle ("TFO Doyle") are members of the Columbus, Ohio Airport DEA Group.

8. Based on the information received, the officers learned that on December 4, 2019, Aguilar Valdovinos purchased a one-way ticket for her travel the following day on American Airlines Flight #2102 from CMH to the Los Angeles International Airport (LAX).

9. On December 5, 2019, at approximately 3:15 p.m., TFO D'Orazio observed Aguilar Valdovinos at the bar near the departure gate for Flight #2102. TFO D'Orazio and DEA Task Force Office Raul Melo ("TFO Melo") approached Aguilar Valdovinos in a way as not to block her freedom of movement and identified themselves as law enforcement with the DEA. TFO D'Orazio advised Aguilar Valdovinos that she was not in trouble and that she was free to leave. Aguilar Valdovinos agreed to speak with TFOs D'Orazio and Melo.

10. TFO D'Orazio asked Aguilar Valdovinos when she had purchased her ticket, and she said, "Yesterday." When asked about her reason for travel, Aguilar Valdovinos stated that she was flying home to Los Angeles and that she had traveled to Columbus to see family for Thanksgiving. TFO D'Orazio then asked Aguilar Valdovinos when she had arrived, and she stated that she had arrived two days ago. Aguilar Valdovinos later told TFO D'Orazio that she was in Columbus for only one day.

11. Aguilar Valdovinos initially stated that she lived in Los Angeles, but after TFO Melo asked about her Washington state identification, Aguilar Valdovinos acknowledged that she lived in Washington. Aguilar Valdovinos did not provide an explanation for why she was flying to Los Angeles instead of Washington.

12. TFO D'Orazio asked Aguilar Valdovinos for consent to search the purse in her

possession and for his partner to search her checked bag. Aguilar Valdovinos consented to a search of her purse, but she refused to give consent for the search of her checked bag. TFO D'Orazio asked Aguilar Valdovinos if her bag contained anything that she was concerned about officers finding, and she responded that she just did not want the bag searched. When TFO D'Orazio explained to Aguilar Valdovinos several times that officers were looking for narcotics and narcotic proceeds such as a large amount of money, she denied that she had such items and stated that she simply did not want her bag searched.

13. Meanwhile, TFO Doyle located Aguilar Valdovinos' checked bag. Columbus Regional Airport Authority Police K-9 Officer Jenelle DiFolco ("Officer DiFolco") and certified narcotic detection K-9 "Daron" responded to conduct a K-9 sniff of four pieces of luggage, which were placed in a straight line approximately two feet apart.

14. Officer DiFolco deployed K-9 Daron and gave him the command to search. K-9 Daron sniffed the first two pieces of luggage and showed no interest. When K-9 Daron sniffed the third piece of luggage (Aguilar Valdovinos' check bag), he showed a change of behavior by squaring off to the bag and sniffing hard at the seam. K-9 Daron indicated a positive alert for the odor of narcotics by scratching at Aguilar Valdovinos' hard-sided piece of luggage. Officer DiFolco then advised TFO D'Orazio of the positive alert.

15. TFO D'Orazio advised Aguilar Valdovinos that he was going to seize her checked bag for the purpose of obtaining a search warrant and provided her with a copy of the DEA 12 receipt form. The officers also seized Aguilar Valdovinos' Apple iPhone as evidence. Aguilar Valdovinos refused to sign the DEA 12 receipt form but did accept her copy. Aguilar Valdovinos then boarded her flight without further interaction with officers.

16. Following the positive narcotic K-9 alert to Aguilar Valdovinos' checked bag, TFO

Doyle obtained a search warrant for Aguilar Valdovinos' checked bag from Franklin County Municipal Court Judge Mark Hummer.

17. On December 6, 2019, TFOs D'Orazio and Doyle executed the search warrant for Aguilar Valdovinos' checked bag. Officers found fourteen pairs of jeans and a pack of rubber bands among other items in the bag. Inside the pockets of several pairs of jeans were bundles of rubber-banded currency. Each bundle of currency was folded, hidden inside a pocket, and labeled with a notation of "2.0" or "7.0," indicating the amount contained in each bundle. As a result of the investigation, TFO Doyle seized the currency as drug proceeds.

18. Officer DiFolco responded to DEA's airport office with K-9 Daron to conduct a K-9 sniff of the seized currency.

19. The currency seized from Aguilar Valdovinos was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

    a. Ten USPS packages were placed in a circle in the DEA office. Five packages were empty and five contained shredded currency. Officer DiFolco and K-9 Daron entered the area, and Officer DiFolco gave K-9 Daron the command to search. K-9 Daron sniffed all ten packages and showed no interest. Officer DiFolco and K-9 Daron then left the area.

    b. The DEA officers replaced one of the packages with the USPS package that contained the money from Aguilar Valdovinos. The location of the money was unknown to Officer DiFolco. Officer DiFolco and K-9 Daron returned to the area, and Officer DiFolco gave K-9 Daron the command to search. K-9 Daron sniffed three packages in the circle. Officer DiFolco noted that K-9

Daron showed a change of behavior by snapping his head and sniffing the third package a second time. K-9 Daron quickly indicated a positive alert for the odor of narcotics by scratching at the third package. The DEA officers advised Officer DiFolco that it was the package containing the money seized from Aguilar Valdovinos.

20. An official count of the United States currency seized from Aguilar Valdovinos revealed that the currency totaled $45,000.00 (the defendant):

| Denomination | Quantity | Total |
|---|---|---|
| $100 | 70 | $7,000.00 |
| $50 | 38 | $1,900.00 |
| $20 | 1,800 | $36,000.00 |
| $10 | 10 | $100.00 |
| | | $45,000.00 |

21. On December 6, 2019, Aguilar Valdovinos called the Columbus Airport Police Communication Center and requested to speak to the DEA Group. TFO D'Orazio spoke with Aguilar Valdovinos regarding the consensual encounter and seizure of the currency at CMH. During the call, Aguilar Valdovinos asked TFO D'Orazio how to get her money back. TFO D'Orazio explained the claim process to Aguilar Valdovinos.

22. TFO D'Orazio then asked Aguilar Valdovinos why she previously had told him that her bag did not contain any money. Aguilar Valdovinos stated that she was never asked if there was money in the bag. Contrary to Aguilar Valdovinos' statement, TFO D'Orazio specifically asked Aguilar Valdovinos multiple times throughout their interaction if she was carrying any large amounts of money on her person or in any of her bags. When asked why she was carrying the money, Aguilar Valdovinos stated that the money was for her surgery.

23. In addition, TFO D'Orazio asked Aguilar Valdovinos about the source of the money and her reason for having the money in Columbus. Aguilar Valdovinos stated that her

"sugar daddy" had given the money to her for the surgery and that she had to fly to Columbus to pick up something that was not related to the money. Aguilar Valdovinos further stated that she was not in Ohio for her surgery.

24. TFO D'Orazio asked Aguilar Valdovinos to identify her "sugar daddy" and to clarify why she had brought the money to Ohio if she was having her procedure performed somewhere else. Aguilar Valdovinos stated that her "sugar daddy" was a man from Washington named "Eric." Aguilar Valdovinos refused to provide "Eric's" last name. When asked for "Eric's" phone number, Aguilar Valdovinos again refused to provide the information.

25. TFO D'Orazio then asked Aguilar Valdovinos if he could look up the phone number in the iPhone that was seized from her. Aguilar Valdovinos agreed. When asked for the passcode to unlock her phone, Aguilar Valdovinos provided the numbers "0000." The passcode on Aguilar Valdovinos' phone was six digits. She then stated, "000000." Neither passcode unlocked the phone.

26. When asked where she was traveling for her surgery, Aguilar Valdovinos stated that she had flown from Washington to Columbus and then was to fly to Los Angeles, where she would be picked up and driven into Mexico. Aguilar Valdovinos stated that she was to meet with a surgeon named "Dr. Dassh." When asked to provide contact information for "Dr. Dassh," Aguilar Valdovinos refused. Aguilar Valdovinos stated that all of the money was for her procedure and that the doctor accepted cash. When asked why she was carrying a bulk pack of rubber bands in the same bag as the currency, Aguilar Valdovinos stated, "I just like rubber bands."

27. TFO D'Orazio performed multiple searches for a "Dr. Dassh" that returned zero results.

28. Upon conducting further investigation, SA Hanley learned that a telephone number

used by Aguilar Valdovinos was the top contact of a telephone number associated with a known heroin distributor.  SA Hanley also learned that a family member of Aguilar Valdovinos was involved in the transport of a load of methamphetamine from the Seattle area to Minnesota on or about November 28, 2019.

29.  On or about February 25, 2020, the DEA received a timely claim from Aguilar Valdovinos in the administrative proceedings, asserting an interest in the defendant.  In her claim, Aguilar Valdovinos stated that she left Seattle with $25,000.00 of her own money and with $20,000.00 that she purportedly had received as a loan from her boyfriend.  Aguilar Valdovinos indicated that she went to Ohio for a day to visit a friend and then proceeded to Los Angeles where she intended to stay with family while she had cosmetic surgery procedures.

30.  In support of her claim, Aguilar Valdovinos attached tax returns for the years 2017 through 2019.  Notably, Aguilar Valdovinos claimed the earned income credit in 2017 and 2018 and listed her occupation as a "waitress."  The copy of the Form 1040 return that Aguilar Valdovinos submitted for 2019 is incomplete and provides no indication that she has filed the return with the IRS.

31.  Based on the foregoing facts, the United States asserts that the defendant, $45,000.00 in United States currency, represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.  Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

s/Deborah D. Grimes

DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Deborah.Grimes@usdoj.gov

**VERIFICATION**

I, Eric M. Doyle, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

5-22-20
Date

ERIC M. DOYLE, Task Force Officer
Drug Enforcement Administration

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

(b) County of Residence of First Listed Plaintiff: Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202 (513) 684-3711

## DEFENDANTS

Forty-Five Thousand and 00/100 Dollars ($45,000.00) in United States Currency

County of Residence of First Listed Defendant: Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- ❒ 3 Federal Question *(U.S. Government Not a Party)*
- ❒ 2 U.S. Government Defendant
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ❒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ❒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

Other:
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [X] 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 485 Telephone Consumer Protection Act
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
Forfeiture pursuant to 21 U.S.C. § 881(a)(6)

Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❒ Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE: 05/22/2020

SIGNATURE OF ATTORNEY OF RECORD: s/ Deborah D. Grimes

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____